THOMAS E. REILLY, JR., NELL BETHEL, JEAN MERRITT, REMI C. PATTON, RICHARD ROSENTHAL, INDIVIDUALLY AND AS MEMBERS OF THE INDIANA STATE TEACHERS RETIREMENT FUND BOARD *v.* MARY F. ROBERTSON AND ESTHER DAVIS.

[No. 376S92. Filed February 22, 1977. Rehearing denied April 21, 1977.]

*Theodore L. Sendak*, Attorney General, *Donald P. Bogard, Anthony J. Metz III*, Deputy Attorneys General, for appellants.

*Theodore Lockyear, Steve Barber*, of Evansville, for appellees, *Lewis C. Bose*, Indianapolis, *Michael Marchese, Jr., Daniel B. Seitz*, of Fort Wayne, amicus curiae for Association of Indiana Legal Reserve Life Insurance Companies, *Bose, McKinney & Evans*, of counsel, of Indianapolis.

DeBRULER, J.—This is an appeal from the judgment of the Vanderburgh Circuit Court invalidating the adoption of separate actuarial tables for men and women retired teachers for the computation of benefits to be paid by the Indiana State Teachers' Retirement Fund.

We have permitted transfer of this appeal to this Court pursuant to Ind. R. Ap. P. 4(A)(10), recognizing that it "involves a substantial question of law of great public importance and that an emergency exists for a speedy determination."

Appellee Mary Robertson is a female teacher in the Evansville-Vanderburgh County School System, part of whose salary is withheld and paid into the Indiana State Teachers' Retirement Fund ("Fund"). Appellee Esther Davis is a retired teacher who had taught in the same system, who had also contributed to the Fund, and who was receiving benefits

therefrom. Appellees filed suit in the Vanderburgh Circuit Court, alleging that by the use of actuarial tables adopted in 1972, appellees would receive approximately fifteen dollars less per month in retirement benefits than male teachers of the same age and equivalent teaching experience. This action was brought on behalf of themselves and the class of female teachers retired or eligible for retirement, against the Board of Trustees of the Indiana State Teachers' Retirement Fund and its members as individuals. Appellees advanced four theories of recovery:

(1) That the adoption of sex-differentiated mortality tables deprived appellees of rights under the United States and Indiana Constitutions and under Indiana statutory law. Specifically appellees alleged violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Rights and Privileges Clause, Art. 1, § 23, of the Indiana Constitution, and that the Board exceeded the authority of its enabling statute, Ind. Code §§ 21-6-1-1 to -6-15-11 (Burns 1975).

(2) That the Board's action deprived appellees of their civil rights contrary to the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1970).

(3) That the Board's action violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (1970).

(4) That the Board's action "impaired the obligation of contracts" contrary to Art. 1, § 10, of the United States Constitution and Art. 1, § 24, of the Indiana Constitution.

The relief requested was an injunction requiring the payment of equal benefits to male and female retired teachers; a declaratory judgment invalidating the Board's action, and an accounting for the differences in benefits paid, and damages equal thereto.

The trial court severed the trial of the issues of liability and damages. After discovery, trial, and briefing, the court rendered judgment for the appellees on their first and third theories of recovery, holding that:

(1) The use of separate mortality tables deprived plaintiffs of equal protection and equal privileges, in that there was no rational basis for the classification of retired teachers by sex.

(2) The differential payments constituted an unlawful employment practice under Title VII of the Civil Rights Act of 1964.

The trial court held that the Board members were not liable under § 1983, and that the Board had not "impaired the obligation of contracts." The Court appointed a master pursuant to Ind. R. Tr. P. 53 to investigate the amount of individual damages for members of the class. The master was ordered paid an hourly rate plus expenses, which cost was assessed against the Fund.

The Board filed its motion to correct errors and appealed, raising the following issues:

(1) Whether payment of differential retirement benefits to male and female retired teachers violates the Equal Protection Clause (or the Rights and Privileges Clause of the Indiana Constitution).

(2) Whether the Due Process Clause of the Fourteenth Amendment prohibits the Board's action.

(3) Whether such payment violates the Civil Rights Act, and therefore the Supremacy Clause (United States Constitution, Art. VI, cl. 2).

(4) Whether the trial court erred in assessing the fees paid the master against the Fund.

(5) Whether the judgment below is supported by sufficient evidence.

## I. STATEMENT OF FACTS

The Indiana State Teachers' Retirement Fund was established in 1915, "to be used and applied in the payment of annuities to persons engaged in teaching or in the supervision of teaching in the public schools of the state. . . ." Ind. Code § 21-6-1-1 (Burns 1975). The Fund is administered

by its board of trustees. Ind. Code § 21-6-1-3. The Fund consists of an annuity account, into which member teachers contribute a portion of their salaries, (3% annually at the time of the trial of this cause) and a pension reserve account, consisting of funds contributed by the State. Ind. Code § 21-6-1-10.

The Board is authorized to conduct actuarial investigations at least once every six years to determine the level of contributions necessary to provide the required benefits. Ind. Code § 26-6-1-6(b). The benefits provided are of seven different forms, at the retired teacher's option. Teachers' Retirement Fund Rules 22 § 1, 25, Ind. Adm. Rules & Reg. (21-6-1-11) -35, -49 (Burns Code Ed. 1976). Some of these guarantee repayment of the teacher's contribution, others some payment for life, others some benefit to the teacher's survivors.

The pension portion of a retiree's check is approximately 87% of the total amount of the check and is paid solely from the contribution of the State. The annuity portion of a retiree's check is approximately 13% of the check total and represents the participation of the retiree in the annuity account contributed by teachers. The pension portion is the same for all teachers who are similarly situated with respect to age, years of service, salary and date of retirement. The annuity portion is not the same for all teachers so similarly situated, in that women retirees receive approximately fifteen dollars less per month than men retirees; and this differential of course reduces the woman's total monthly check by a life amount. The differential in the annuity portion is the result of the adoption and use by the fund of the "1971 Group Annuity Mortality Tables-Male" to calculate the annuity portion due males, and the adoption and use by the Fund of that same table with a five year set-back in the case of women.

Prior to 1972 the Fund for many years in making the calculation of annuity portions used a mortality table which did not subclassify annuitants by sex, and in fact simi-

larly situated male and female annuitants received the same amounts. The contributions of men and women teachers have been equal. The eligibility requirements for participation in the retirement program have been the same for men and women. And both prior to and after 1972, the life expectancy of women as a group has been greater than that of men as a group.

The annuity side of the retirement program for teachers operates much like an annuity contract sold in the private sector. For a sum certain insurer contracts to pay a periodic sum to the annuitant for a term certain or for life. An annuity insures against the risk of living too long while a life insurance policy insures against the risks resulting from premature death. And in the private sector, the terms of annuity contracts are struck by the use of separate mortality tables for men and women.

We turn now to appellant Fund's first contention which is that the trial court erred in adjudging that the adoption and use by the Fund of separate mortality tables to calculate the annuity payments for men and women, deprived appellees of the equal protection and equal privileges of the law.

## II. JURISDICTION, STANDING, PROPER PRESENTATION OF CONSTITUTIONAL CLAIM

From the record before us, it clearly appears, and is uncontested between these parties, that the Circuit Court of Vanderburgh County was a tribunal vested with authority to adjudicate appellees' constitutional claims; that the appellees have standing to make those claims; and that those claims have been fully litigated in a suitable adversary atmosphere, and permit of reasonable judicial resolution. *Board of Commissioners* v. *Kokomo City Plan Commission*, (1975) 263 Ind. 282, 330 N.E.2d 92.

## III. ELIMINATION OF POSSIBLE NON-CONSTITUTIONAL DISPOSITION

We turn next, as it is our duty to do, to determine if this case can be justly disposed of on non-constitutional grounds. *Board of Commissioners* v. *Kokomo City Plan Commission, supra. Passwater* v. *Winn,* (1967) 248 Ind. 404, 229 N.E.2d 622. As part of its conclusions, the trial court stated in its judgment:

"12. Pursuant to IC 1971, 21-6-1-6 (a) Burns Ind. Stat. Ann. § 28-4806 (a) :

'The board of trustees of the Indiana State teachers' retirement fund shall have power to adopt and enforce all necessary by-laws and regulations for the government and administration of the department and the control and investment of the funds committed to its care not inconsistent with the provisions of this act . . . and shall have discretionary power in determining all matters pertaining to its trust not specifically provided for in this act. . . .'

13. Pursuant to IC 1971, 21-6-1-6 (b), Burns Ind. Stat. Ann. § 28-4806 (b) :

'The board shall provide for an actuarial investigation during the year 1953, and every six (6) years thereafter, and more often as the board may decide . . .'

14. Acting pursuant to statutory authority, the members of the Indiana State Teachers Retirement Fund Board, as an agency of the State of Indiana, adopted the use of separate tables for computing the annuity portion of retirement checks of teachers in Indiana.

15. There has been no showing that the members of the Board have acted outside the scope of their authority, or that they could have acted individually to adopt the tables in question."

By these conclusions, the trial court rejected appellees' contention that the challenged action of the Board was illegal as beyond its statutory authority. These conclusions are not clearly in error and appear supported by the statutory references made, and stand unchallenged on appeal. As such they negative the possibility of making a non-constitutional resolution of this appeal.

## IV. SELECTION OF THE PROPER EQUAL PROTECTION TESTS (FEDERAL)

Appellant Fund's claim, arising as it does under the Equal Protection Clause, requires that we first determine the proper constitutional standard to be applied. Here the classification of annuitants is based upon sex and affects the amount of monthly annuity payment received by each annuitant. The Fund contends that its governmental interests in making this classification based upon sex are to make the fund more secure and to make a fair distribution of annuity benefits. We conclude that the fair and substantial relation standard is to be applied here. In order for a classification to satisfy the guarantee of equal protection, it "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co.* v. *Virginia*, (1920) 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989; *Reed* v. *Reed*, (1971) 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225; *Haas* v. *South Bend Community School Corp.*, (1972) 259 Ind. 515, 289 N.E.2d 495; *Indiana High School Athletic Association* v. *Raike*, (1975) 164 Ind. App. 169, 329 N.E.2d 66.[1] The question in this case then is whether the difference in sex between annuitants warrants the Fund's decision to pay lower monthly benefits to women than it does to men.

---

1. In *Craig* v. *Boren*, (1976) 429 U.S. 190, 97 S.Ct. 451, the Supreme Court stated the equal protection standard applied in sex-based classifications as follows: "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." 97 S.Ct. at 457. This statement lends credence to the belief of many commentators that the Supreme Court employs an "intermediate" level of scrutiny in the equal protection analysis of sex-based classifications. See discussion and authorities in *Raike, supra,* at 329 N.E.2d 71-78. However, in view of the result reached in this case under the traditional "rational basis" low-level scrutiny, we do not find it necessary to discuss application of heightened levels of scrutiny. Indeed, this case seems unusual in that the result reached is peculiarly independent of the standard employed.

## V. THE STATE EQUAL PROTECTION TEST

As appellees' equal protection claim is also raised under Art. 1, § 23, of the Indiana Constitution, we must also determine the legal standard to be applied in enforcing that provision. The standard to be applied here was stated in *Phillips* v. *Officials of City of Valparaiso,* (1954) 233 Ind. 414, 120 N.E.2d 398, where this Court said:

> "The question of classification, under the privilege and immunities clause of the Indiana Constitution, Article 1, § 23, is primarily for the legislature and does not become a judicial question unless it clearly appears that the legislative classification is not based on substantial distinctions with reference to the subject-matter, or is manifestly unjust or unreasonable." (Citation omitted.) 233 Ind. at 421, 120 N.E.2d at 401.

It has been established by this Court that the rights intended to be protected by Art. 1, § 23, of the Indiana Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution are identical. *Haas* v. *South Bend Community Schools, supra.* This does not mean, however, that federal cases interpreting the Equal Protection Clause are binding upon this Court in making an interpretation of the Indiana Constitution. Our interpretation of a state constitutional provision is an independent judicial act of this Court, and in making that judgment, federal cases have only persuasive force. *Midwestern Petroleum Corp.* v. *State Board of Tax Commissioners,* (1933) 206 Ind. 688, 187 N.E. 882.

## VI. THE BURDEN OF PLAINTIFF BELOW AND THE BURDEN OF APPELLANT HERE

In the court below, plaintiffs had the burden to negative every conceivable basis which might have supported its use of sex to classify annuitants. *Madden* v. *Commonwealth of Kentucky,* (1940) 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590; *Lehnhausen* v. *Lake Shore Auto Parts Co.,* (1973) 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351.

And in that court the Board is presumed to have acted constitutionally in adopting this challenged formula for determining annuity benefits under both federal and state constitutional law. *McDonald* v. *Board of Election Commissioners of Chicago*, (1969) 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739; *Board of Commissioners of Howard County* v. *Kokomo City Plan Commission, supra*.

However, the Board of Trustees of the pension fund, as appellant, has the burden before this Court.

"It has been held many times that all reasonable presumptions are indulged on appeal in favor of the rulings and judgments of the trial court, that the record must exhibit the errors for which the reversal is sought, and that a court of appeals will not presume anything in favor of appellant to sustain his alleged errors." *First National Bank* v. *Penn-Harris-Madison School Corp.*, (1970) 255 Ind. 403, 406, 265 N.E.2d 16, 18-19.

Therefore, before us appellant Board must present a ground sufficient to support the use of sex to classify annuitants which the trial court erroneously or arbitrarily refused to accept as sufficient.

The trial court concluded that it was arbitrary and without rational basis for the fund to classify annuitants by sex, and based this conclusion upon, among others, the reasons that sex is only one of innumerable factors influencing life expectancy and other such factors are ignored; that group mortality statistics ignore the traits of the individual female; that 82.9% of females will have the same year of death as 82.9% of the males and as a consequence those females will die having received less than those males; and that the additional income given retired males monthly will permit them to live in retirement more comfortably than retired females.

On appeal, the Fund contends that the classification of annuitants by sex resulting from its adoption of the separate mortality tables serves to promote the objective of the teachers' retirement legislation by insuring the financial security of the Fund. While steps taken to avoid paying out more in

benefits than the fund can bear would promote the security of the Fund and the general objectives of the legislation, there is no showing in the record, nor is there a convincing argument in the briefs of appellant that the adoption of separate tables for men and women would have this effect. No supported assertion exists in the case that the failure of the Board to consider the sex of annuitants in computing their annuity portions prior to 1972 placed the solvency of the Fund in jeopardy to any degree. The trial court found, in support of its judgment, that the liability of the Fund can feasibly be determined by use of a mortality table which ignored the sex of annuitants, and that such a procedure had been followed by the Fund for many years prior to 1972. Appellants' contention cannot be upheld as it is unsupported.

The remainder of appellants' brief, devoted to the equal protection issue, provides support for the proposition that it is more equitable for men to be paid greater annuity benefits than women because men as a group do not live as long as women as a group and therefore have a shorter period of time after retirement in which to collect periodic payments. Implicit in this part of the brief is the assertion that the purpose of the retirement plan for teachers is furthered by the payment of greater periodic sums to retired men.

The legislative purpose of this pension legislation is broader than that envisaged by appellant Fund. Its overall purpose is to provide an incentive to all teachers to remain in teaching as a lifetime career, and to accept the moderate salaries paid teachers, and to forego opportunities in other areas of employment as they may arise. In return, the State enjoys the benefit of having public school students taught by teachers, who, through increased experience and education, have become more effective. The plan does not first have practical effect when teachers become eligible to retire, but begins to operate when the individual teachers first begin to teach. From the outset of a first teaching position the plan is an encouragement to reject alternative types of employment. The monthly monetary contribution which each teacher must

pay into the retirement fund has this same general purpose. It enhances the incentive by giving the teacher an increasing personal stake in the fund from which future payments will be made.

It is to be noted that it is only by remaining in the profession that a public school teacher can participate in the pension plan. Adding to the value of the Fund to each teacher is the fact that the Fund is sponsored, maintained and secured by the state government. And, we also observe that the opportunities of both male and female teachers to qualify for retirement eligibility is equal and the actual standards for eligibility of male and female teachers are the same. And finally, the pension payment and the annuity payment when added together comprise the periodic retirement check received by an annuitant, and that this check is delivered in fulfillment of the promise of the plan that the daily needs of retired persons will be met in part by such periodic payments until death if the annuity for life is chosen. And it is the belief which each teacher has that such checks will be forthcoming on retirement and that such checks will provide a minimal form of satisfaction for daily human needs that makes the intended incentive operate, which in turn legitimates the entire pension.

The Fund argues that the payment of equal annuity portions to retired men and women would be tantamount to requiring the men in the plan to subsidize the women in the plan contrary to the purpose of the legislation which is to provide an incentive to both men and women teachers to remain in the profession. The incentive to a man to stay in the profession could be lessened by the Fund's requirement that he provide some of the money through his contribution to pay women's benefits. He could conceivably leave the teaching profession, secure employment in the private sector, and buy an annuity benefit on the open market which would be calculated by a male-only mortality table.

As in *Reed* v. *Reed, supra,* the purpose served by treating men and women differently (here such purpose being the

avoidance of this subsidization effect) "is not without some legitimacy." However, the possibility that male teachers have been or will be dissuaded from staying in the teaching profession because of the differential treatment afforded them, arising out of the receipt of an equal annuity benefit, which benefit itself is a small part of each periodic payment, is speculative and remote. A reasonable person must conclude that it is the nature of a group annuity plan that each individual annuitant actually receives a unique benefit because the death of each will occur at a unique point in time, and the subsidization of one annuitant of another is constantly going on. In addition, the subsidization factor is demonstrable for the most part in group actuarial terms only, and the difference in treatment of the individual male under unisex and sex-segrated tables is practically immeasurable. And, it is highly likely that a male teacher would consider any such differential in light of the equal manner in which male and female teachers have qualified by service and age, and contribution, and in light of the equal daily human needs which both male and female annuitants have, and upon such consideration would discount such differential in deciding whether to accept some offer of employment outside public school teaching. We therefore conclude that the difference in sex of annuitants of this pension plan, carrying with it the different group mortality experience, bears no real and substantial relationship to the purposes of the legislation. The man and woman teacher when considered at the point at which each is first qualifying for retirement benefits, each of the same age, and each having qualified by the same number of years and level of service are not by reason of disparate group mortality experience dissimilarly circumstanced, and are entitled to participate equally in the right to receive payments from that fund made up of the contribution of teachers.

And we finally conclude that the trial court was correct in adjudging that the objective of this pension legislation is not advanced in a manner consistent with either the Equal Protection Clause of the Fourteenth Amendment or the Equal

Privileges Clause of the Indiana Constitution by the adoption and application by the Fund of the group annuity mortality table with a five year set-back for females, thereby providing a greater monthly annuity payment to males than females.

The Fund has pointed out that the "B" options are available to both men and women teachers, and that under one of the "B" options, a woman will actually receive a greater monthly payment. We are not convinced that the existence of such options render the uneven distribution of benefits under "A" options constitutionally permissible. From the record we know that "A" options are selected by the vast majority of all annuitants and that "B" options are not the functional equivalent of "A" options.

In two recent cases considered by the United States Supreme Court, sex-based classifications were upheld as consistent with the guarantee of equal protection under law. They merit specific consideration here.

In *Kahn* v. *Shevin*, (1974) 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189, the issue before the court was whether a state statute granting widows an annual $500 tax exemption violated the Equal Protection Clause as to widowers. The court noted that the financial difficulties confronting the lone woman exceed those facing the man. The job market is inhospitable to the woman seeking any but the lowest paid jobs. While the widower usually may continue in his job, the widow often will have to look for a job with few marketable skills. The court found that the difference rested upon "some ground of difference having a fair and substantial relation to the object of the legislation." The tax law was reasonably designed to further the state policy of "cushioning the financial impact of spousal loss upon the sex for which the loss imposes a disproportionately heavy burden." 416 U.S. at 355, 94 S.Ct. at 1737. In the case at bar, the annuity protects against the risks attendant to living out the remainder of one's life. Those risks do not place a disproportionately heavy burden on men which could justify their larger monthly checks.

Therefore, this case is not supportive of appellant's position in this appeal.

In *Geduldig* v. *Aiello*, (1974) 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256, the issue was whether a state-administered, privately financed health insurance plan for persons in private employment who are temporarily unable to work because of disability not covered by workmen's compensation could exclude from coverage disability due to normal pregnancy and delivery without violating the Equal Protection Clause. The majority held that the exclusion of that disability was not invidious discrimination. The state did not have to insure all risks. If normal pregnancy were included, the annual employee contributions would have to be increased and the program might no longer be self-supporting. Or, the available funds would be distributed at an inadequate level for all disabilities.

> "These policies provide an objective and wholly non-invidious basis for the State's decision not to create a more comprehensive insurance program than it has. There is no evidence in the record that the selection of the risks insured by the program worked to discriminate against any definable group or class in terms of the aggregate risk protection derived by that group or class from the program. There is no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not." (Footnotes omitted.) 417 U.S. at 496-497, 94 S.Ct. at 2492.

In the case at bar the monthly annuity payments are intended to be perceived by potential beneficiaries as providing satisfaction of short term daily needs arising during retirement. By providing greater payments to men, the appellant Fund has provided men with a greater panoply against risks arising from daily human needs. No difference in those risks as between men and women exists, justifying the additional protection afforded men. Viewed with this perspective, *Geduldig* v. *Aiello, supra,* does not support appellant's position.

Appellant Fund next challenges the decision of the trial court that the adoption and application of different mortality

tables for men and women annuitants violated the Due Process Clause of the Fourteenth Amendment, and the Supremacy Clause, and rights protected by the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. In light of the fact that this policy of the Fund has been determined by this tribunal to have been unconstitutional in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Equal Privileges guarantee of Art. 1, § 23, of the Indiana Constitution, we deem it unnecessary to consider these further contentions of appellant. Even if such determinations by the trial court were error, such error would not alter our affirmance of the trial court judgment, since the determination of unconstitutionality under equal protection analysis is a complete and sufficient basis for an affirmance. In these circumstances there is no legal interest of the parties to be served by meeting those issues on their merits. *Willets* v. *Ridgway,* (1857) 9 Ind. 367; *State ex rel. Johnson* v. *White Circuit Court,* (1948) 225 Ind. 602, 77 N.E.2d 298.

## VII.  SUFFICIENCY OF THE EVIDENCE

Appellant Fund next challenges the sufficiency of the evidence to support several of the trial court's findings. Finding No. 14 provides:

> "14.  The 1971 Group Annuity Mortality Table—Male adopted by the defendant Board, does not have as its basis the insurance industry's mortality experience with those engaged in the teaching profession."

Appellant points out that the evidence at trial showed that the table was based upon experience with several professions, including teachers. We construe the trial court's finding to be that the table was not based upon experience confined to those engaged in the teaching profession, and so construed, such finding is supported by the evidence.

Findings Nos. 16 and 18 are challenged because they broadly state conclusions about how the benefits of men and women as a group, in the short and long terms, compare, without

taking into account the effect of a woman selecting one of the "B" options. While appellant is correct in its contention that the conclusion is incorrect in that it does not reflect the true comparison of benefits received by men and women under some "B" options, this inaccuracy does not render the findings insufficient to support the court's conclusions under the Equal Protection and Equal Privileges provisions unsupported.

In challenged Finding No. 22, the court discusses a hypothetical situation in which a retired male teacher invests his extra annuity and earns income upon that investment. While the trial court may have miscalculated in assessing the exact dollar benefit which a man might derive from such investment, the ability to make such an investment does exist and serves to increase the differential between the benefits received by men and women. The finding is intended to illustrate this ability, and as such is supported sufficiently by the evidence.

Challenged Findings of Fact Nos. 24 and 25 were made by the trial court in support of the trial court's conclusions that the adoption and application of the different mortality tables for men and women served to deny due process of law and rights protected by 42 U.S.C. § 2000e-2. As those issues are not to be considered in this appeal, the findings related to those issues are irrelevant here.

## VIII. APPOINTMENT, COMPENSATION, AND DUTIES OF SPECIAL MASTER

Appellant Fund contends that the trial court committed error when, as part of its judgment, it appointed a special master to determine the financial liability resulting in this case and provided that the master be paid $35.00 per hour and ordered that the fees and expenses of the master be paid by the appellant Fund. After this order was made, appellees, pursuant to Ind. R. Tr. P. 53, sought and obtained an order of this Court concurring in this challenged part of the judgment. On appeal, appellant Fund contends that the $35.00

per hour rate is excessive and contrary to the provision of Trial Rule 53 that the "compensation to be allowed to a master shall be allowed in the manner and amount paid to judges pro tem and such additional compensation as is fixed by the Supreme Court." Appellant Fund points out that Ind. Code § 34-1-13-4 (Burns 1973) limits the compensation of a judge pro tem to ten dollars per day and five cents a mile for travel, and further requires that the compensation of a judge pro tem "be paid out of the county treasury for the time being, for which the county shall have credit on settlement with the treasury of state. . . ." and therefore the trial court should not have ordered the master paid directly by a state agency, but should have ordered him paid by the county. We construe the limitations upon the compensation of masters in Trial Rule 53 and the incorporated statute to apply when the trial court acts alone, without concurrence of the Supreme Court to appoint and set the compensation for a master. Consequently these limitations do not bind this Court and a trial court when acting jointly under the authority of Trial Rule 53, to fix, in either manner or amount, the additional compensation due special masters.

Appellant also contends that the rate of $35.00 per hour is excessive in light of the requirement of the order that employees of the appellant Fund are to assist the master in making his computations. The master is both a lawyer and a certified public accountant, and $35.00 per hour does not appear unreasonable to us for the services of a person with this type of training and expertise. Appellant Fund presents no factual assertions tending to show the unreasonableness of this rate, and we do not believe that the fact that employees of the Fund will deliver the raw data to the master for his use in making the calculations shows it.

Appellant Fund next challenges the scope of the direction given to the master wherein he is directed to furnish the court with information relating to the amount of damages

sustained by female teachers who have not yet retired. Appellees do not answer this contention in their brief, and we can conceive of no use to which the court could put such information if, indeed such a computation is possible. We, therefore, instruct the trial judge to delete such instruction from the judgment. In all other respects, the judgment of the trial court is affirmed.

Hunter, J., concurs; Arterburn, J., concurs with opinion; Givan, C.J., dissents with opinion; Prentice, J., dissents without opinion.

## CONCURRING OPINION

ARTERBURN, J.—I concur with the majority opinion. The basis for this is that there is no showing or evidence presented by the Appellant Board that women teachers live longer lives than men teachers. There is no statistical evidence or mortality table presented that shows that in the teaching profession females have a longer life span than males.

I grant that when the population as a whole is considered statistics indicate women on the average live longer lives than men. However, I ascribe that result to the common knowledge that traditionally men engage in more hazardous or stressful occupations (such as mining, steel construction) while many women are engaged in household activities. To me such a fact colors the mortality tables comparing men and women.

We are dealing in this case solely with the teaching profession. I am inclined to believe that the stresses, strains and hazards of that professions apply alike to the male and female teacher. Until there is evidence to the contrary I must conclude the mortality rate is the same. I, therefore, concur in the majority opinion affirming the judgment of the trial court.

## DISSENTING OPINION

GIVAN, C.J.—I respectfully dissent from the majority opinion in this case. There is no question that the law stated

by the majority is correct in that the equal protection clauses of the Constitutions of the United States and of Indiana and the Civil Rights Act of 1964 all require that persons receive equal treatment. However I do not agree with the majority that when this law is applied to the facts in the case at bar the result is an invalidation of the adoption of the separate actuarial table for men and women retired teachers for the purpose of the computation of their benefits to be paid from the Teachers' Retirement Fund.

Prior to the adoption of that method of determining benefits, men teachers and women teachers were charged equal premiums for their participation, and upon retirement, were given equal monthly benefits. Because of the fact, which is recognized by the majority, that women have a greater life expectancy than men, the result was an unequal treatment based upon sex. This unequal treatment favored women retirees, in that as a group they received the same monthly benefits, but received them for a longer period of time due to their longevity.

It is obvious from the facts of the case that the Board determined that such unequal treatment should not prevail and the sexes should be treated equally. There were two avenues to pursue which would have resulted in equal treatment. One was to charge the men a smaller premium during their period of actual service, and upon retirement give equal payment to men and women. The other was to charge an equal premium regardless of sex, but upon retirement to pay a smaller monthly amount to the women retirees. The Board obviously chose the latter.

The majority opinion points out that some women live no longer than some men and, in fact, some live a shorter time than some men. However the fact remains that given an equal number of men and women commencing retirement at a point in time, when all of the men have died, there will still be living approximately 17% of the women retirees who will continue to receive their monthly payment. Theoretically,

at the time of the death of the last woman, an equal amount of retirement pay will have been received by the group of men and by the group of women. It therefore appears the action of the Board, rather than depriving persons of equal rights, has in fact equalized the benefits under the program.

I would therefore hold the Board's action was entirely proper and that it did in fact cure a situation which was unequal so far as the sexes were concerned.

The trial court therefore should have been reversed, and the plan upheld.

NOTE.—Reported at 360 N.E.2d 171.