**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**COLBY ·COLLEGE, Teachers Insurance and Annuity Association and College Retirement Equities Fund, Defendants.**

Civ. No. 75–136–SD.

United States District Court, D. Maine, S. D.

Oct. 27, 1977.

---

Delores Wilson, Frank J. Tuk, Harain D. Figueroa, James E. Rumsey, Gail J. Wright, Equal Employment Opportunity Commission, Philadelphia Regional Litigation Center, Philadelphia, Pa., George J. Mitchell, U. S. Atty., Portland, Maine, for plaintiff.

S. Mason Pratt, Jr., James E. Purcell, Portland, Maine, William R. Glendon, James B. Weidner, New York City, for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

In this action plaintiff Equal Employment Opportunity Commission (hereinafter "the Commission") alleges that defendant Colby College (hereinafter "Colby") previously has and currently is engaged in unlawful employment practices in violation of § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"). Defendants Teachers Insurance and Annuity Association (hereinafter "TIAA") and College Retirement Equities Fund (hereinafter "CREF") are named as parties having an interest in the outcome of the litigation pursuant to Fed.R.Civ.P. 19(a). Jurisdiction variously is asserted under 28 U.S.C. §§ 451, 1343(4) and 1345 and § 706(f)(1), (3), (g) of Title VII, 42 U.S.C. § 2000e–5(f)(1), (3), (g).[1] In its Amended Complaint the Commission asserts that the periodic retirement annuity and insurance death benefits plans in which Colby and its eligible employees participate and which TIAA–CREF manage impermissibly distinguish between male and female employees on the basis of sex in the disbursement of unequal benefit payments. The Commission prays the Court to enjoin permanently Colby's allegedly discriminato-

---

1. In addition to providing for the creation of the Commission, 42 U.S.C. § 2000e–4, Title VII empowers the Commission to bring a civil action in a United States District Court of appropriate venue against a party, other than a government, governmental agency, or political subdivision, allegedly in violation of Title VII once extrajudicial means of resolving the purported violation have failed. 42 U.S.C. § 2000e–5(f)(1), (3). Congress in 1972 amended Title VII so as to rescind a provision which formerly exempted the employment activities of nonreligious educational institutions from the scope of Title VII. Act of March 24, 1972, P.L. 92–261 § 3, 86 Stat. 103. Title VII now covers employment practices of nondenominational educational institutions. 42 U.S.C. §§ 2000e(b) and 2000e–1.

ry practices, to award appropriate back pay with interest to those individuals adversely affected by such practices, and to order Colby to institute affirmative action programs providing equal employment opportunities for females.

Presently before the Court pursuant to Fed.R.Civ.P. 56(b) is a motion by defendants Colby, TIAA, and CREF for summary judgment in their favor. The motion is restricted to the legal question of whether § 703(h) of Title VII, 42 U.S.C. § 2000e–2(h) (hereinafter "the Bennett Amendment"), the Equal Pay Act, 29 U.S.C. § 206(d), the allegedly applicable regulation promulgated by the Wage and Hour Administrator under the Equal Pay Act, 29 C.F.R. § 800.116(d) (1976), and the recent decision of the United States Supreme Court in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), fully dispose of this action as a matter of law in favor of defendants. The issue thus presented has been fully briefed and argued. For the reasons set forth below, defendants' motion for summary judgment is granted.

## I.

The essential facts are undisputed. Colby is a nondenominational, nonprofit, privately supported educational institution located in Waterville, Maine. TIAA is a nonprofit, legal reserve life insurance company. The Carnegie Foundation for the Advancement of Teaching established TIAA in 1918 to provide retirement and insurance plans for educational institutions and their staff members. Only colleges, universities, independent schools, and similar nonprofit institutions principally engaged in education or research are eligible to participate in TIAA programs. CREF is a not-for-profit corporation created in 1952 through a Special Act of the New York legislature to complement the activities of TIAA. McKinney's 1952 Session Laws, ch. 124. Participation in CREF programs is limited to the same categories of institutions as are eligible for TIAA plans. Some 2800 institutions participate in TIAA–CREF programs.

In 1935 Colby's Board of Trustees voted to enroll the college in a retirement plan managed by TIAA. Under the terms of the arrangement both Colby and its participating employees make contributions to the plan calculated as a percentage of the participant's salary. Colby in 1956 likewise joined TIAA's life insurance program. Similarly situated male and female employees enrolled in the retirement annuity and life insurance plans make precisely equal contributions to the plans, and Colby's contributions to the plans also are exactly equal for similarly situated employees, regardless of sex. The annuity plan permits enrollees at retirement to select one of several options for the repayment of accumulated funds. The repayment procedures generally involve either periodic benefits for the lifetime of the annuitant alone or periodic benefits for the lifetime of two persons, typically the annuitant and his or her spouse. The life insurance plan provides for decreasing group term coverage for each enrollee to age 70. Thereafter, the annuity benefits are designed to provide the risk protection appropriate for advancing age. Hence, the intent of the insurance plan is to provide dependents of an insured with financial protection in the event of the insured's premature death, whereas the annuity payments are designed to provide the retiree with income for the duration of his or her life.

The aspect of the Colby programs which the Commission challenges is the manner of payment of periodic annuity and life insurance benefits. In calculating the disbursement of annuity and insurance funds, TIAA–CREF utilize two sets of life expectancy tables, one for men and another for women. Actuarial data which TIAA–CREF have compiled show that women enrolled in their annuity and insurance plans consistently enjoy a lower mortality rate than similarly situated males. For instance, TIAA–CREF mortality statistics reveal that at age 65 the life expectancy for male annuitants is 17 years while for female annuitants of the same age the figure is 21 years. Female annuitants at age 65, therefore, can expect to receive their annui-

ty payments for an average of four years longer than their male counterparts. To account for this difference in longevity, the TIAA–CREF managed annuity fund pays women annuitants from Colby monthly benefits which are somewhat less than the monthly payments made to male annuitants. Underlying this practice is the essential proposition upon which the insurance industry operates that the fund from which annuities are paid should not be exhausted until the last annuitant covered by the fund dies. In similar fashion, the TIAA–CREF managed insurance plan pays to male insureds lower death benefits than to similarly situated women. Because of the higher mortality rate for men, monies from the group term life insurance fund for males are expended at a faster rate than monies from the women's group fund.

The Commission agrees with defendants that because all similarly situated participants make equal contributions to the annuity and insurance funds, and because Colby pays exactly equal amounts into the funds on behalf of each similarly situated participant, all similarly situated annuitants or insureds receive coverage having the same present actuarial value. Where the Commission perceives a violation of Title VII is in the unequal rate at which the annuity and life insurance benefits are paid out. According to the Commission this rate differential simultaneously discriminates both against women with regard to annuity payments and against men with respect to death benefits.

## II.

Section 703(a)(1) of Title VII provides in pertinent part that it shall be an unlawful employment practice for an employer

> to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin,

42 U.S.C. § 2000e–2(a)(1).[2]

Enacted in 1963 and effective in 1964, the same year in which Congress passed Title VII, the Equal Pay Act provides in pertinent part that no employer shall discriminate

> between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to . . . (iv) a differential based on any other factor other than sex:

29 U.S.C. § 206(d)(1).[3]

The Bennett Amendment, § 703(h) of Title VII, recites in pertinent part:

> It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 [the Equal Pay Act].

42 U.S.C. § 2000e–2(h).

Both the language of the Bennett Amendment and its legislative history disclose the plain intent of Congress to avoid subjecting employers to two conflicting standards, those of Title VII and those of the then recently enacted Equal Pay Act, and to provide that any possible conflict between the requirements of Title VII and of the Equal Pay Act is to be resolved in

---

**2.** Although § 703(a)(1) does not specifically refer to retirement plans, it is settled that retirement plans are a condition of employment and fall within the scope of Title VII. *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976); *Peters v. Missouri-Pacific R.R.*, 483 F.2d 490 (5th Cir.), *cert. denied*, 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 238 (1973); *Rosen v.*

*Public Service Electric and Gas Co.*, 477 F.2d 90 (3d Cir. 1973); *Bartmess v. Drewrys U.S.A., Inc.*, 444 F.2d 1186 (7th Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971).

**3.** No party to this action disputes that defendants are subject to the terms of the Equal Pay Act.

favor of the Equal Pay Act. During the Congressional debates over the 1964 Civil Rights Bill, Senator Humphrey, the floor manager of Title VII, stated that the purpose of the Bennett Amendment was to make it "unmistakably clear" that "differences of treatment in industrial benefit plans, including earlier retirement options for women, may continue in operation under this bill if it becomes law." 110 Cong. Rec. 13663–13664 (1964). Likewise, Senator Bennett, sponsor of the Amendment, declared in explaining the proposal, "The purpose of my amendment is to provide that in the event of conflicts [between Title VII and the Equal Pay Act], the provisions of the Equal Pay Act shall not be nullified." 110 Cong.Rec. 13646 (1964).[4]

The Commission, in 1965, initially issued an interpretative guideline stating it would defer to the Equal Pay Act and the Wage and Hour Administrator's interpretations as applicable to Title VII.[5] In 1972, however, the Commission issued a revised guideline, repealing its 1965 guideline, stating that the Commission no longer regarded itself as bound by Equal Pay Act interpretations.[6]

In 1965, the Wage and Hour Administrator issued a regulation interpreting the Equal Pay Act which specifically exempts from liability under the Act an annuity or insurance plan in which employer contributions to the plan are identical for all similarly situated employees even though the benefits which accrue under the plan may be greater for one sex than the other. The regulation, 29 C.F.R. § 800.116(d) (1976), reads in pertinent part:

> If employer contributions to a plan providing insurance or similar benefits to employees are equal for both men and women, no wage differential prohibited by the equal pay provisions will result from such payments, even though the benefits which accrue to the employees in question are greater for one sex than for the other.

The Wage and Hour Administrator's regulation thus specifically sanctions plans, such as the annuity and insurance plans at issue in the present case, which require equal contributions for both men and women, even though the resulting periodic annuity benefits or death benefits may differ.[7]

---

**4.** The following year, in July 1965, Senator Bennett further expounded on the meaning of his Amendment: "Simply stated, the amendment means that discrimination in compensation on account of sex does not violate Title VII unless it also violates the Equal Pay Act." 111 Cong.Rec. 13359 (1965). *Cf. Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 266 (3d Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970) (The Equal Pay Act and Title VII are to be construed *in pari materia* ) (dictum).

**5.** The 1965 guideline contains the following language:

> (a) Title VII requires that its provisions be harmonized with the Equal Pay Act . . . in order to avoid conflicting interpretations or requirements with respect to situations to which both statutes are applicable. Accordingly, the Commission interprets section 703(h) to mean that the standards of "equal pay for equal work" set forth in the Equal Pay Act for determining what is unlawful discrimination in compensation are applicable to Title VII. . . .
> (b) Accordingly, the Commission will make applicable to equal pay complaints filed under Title VII the relevant interpretations of the Administrator, Wage and Hour Division, Department of Labor. . . .

Relevant opinions of the Administrator interpreting "the equal pay for equal work standard" will also be adopted by the Commission.

> (c) The Commission will consult with the Administrator before issuing an opinion on any matter covering both Title VII and the Equal Pay Act.

29 C.F.R. § 1604.7(a), (b), (c) (1965).

**6.** The 1972 revised guideline reads in pertinent part as follows:

> (b) By virtue of section 703(h), a defense based on the Equal Pay Act may be raised in a proceeding under Title VII.
> (c) Where such a defense is raised the Commission will give appropriate consideration to the interpretations of the Administrator, Wage and Hour Division, Department of Labor, but will not be bound thereby.

29 C.F.R. § 1604.8(b), (c) (1976).

**7.** The Wage and Hour Administrator in two Opinion Letters has reiterated the clear import of this regulation. A 1970 Opinion Letter responded to an inquiry concerning the applicability of the equal pay provisions to employer contributions on behalf of employees to pension or retirement plans. The Wage and Hour Administrator stated, "[W]here the employer's contributions to such a plan are equal for both

In 1972 the Commission promulgated its revised guidelines on sex discrimination. 29 C.F.R. § 1604.1 *et seq.* (1976). In direct conflict with the interpretative regulation issued by the Wage and Hour Administrator under the Equal Pay Act, 29 C.F.R. § 800.116(d), the Commission's new guidelines make pension or insurance plans which differentiate in benefits violative of Title VII. The relevant guideline, 29 C.F.R. § 1604.9(f) (1976), states in pertinent part:

(f) It shall be an unlawful employment practice for an employer to have a pension or retirement plan which establishes different optional or compulsory retirement age based on sex, or which differentiates in benefits on the basis of sex.

Despite the deference to the Equal Pay Act and the Wage and Hour Administrator's interpretations of that Act as mandated by the Bennett Amendment, the Commission contends that its revised guideline appropriately interprets Title VII and is controlling on the question of whether the benefits plans presently at issue constitute an unlawful employment practice.

### III.

The recent decision of the Supreme Court in *General Electric Co. v. Gilbert, supra,* controls this case and makes clear that the Wage and Hour Administrator's regulation interpreting the Equal Pay Act, 29 C.F.R. § 800.116(d), must take precedence over the Commission's conflicting interpretation of Title VII, 29 C.F.R. § 1604.9(f). The Supreme Court in *Gilbert* faced the question of whether the employee insurance plan maintained by General Electric Company violated Title VII because it excluded from its coverage disabilities arising from pregnancies. On the merits of the discrimination claim the Court found that the General Electric plan did not contravene the standards of Title VII. *Id.,* 429 U.S. at 133–40, 97 S.Ct. 401.

Particularly germane to the instant motion for summary judgment is the manner in which the *Gilbert* court treated inconsistent administrative interpretations concerning benefits for pregnancy related disabilities. A Commission guideline issued under Title VII required that such benefits be applied on the same terms and conditions as they are applied to other temporary disabilities. 29 C.F.R. § 1604.10(b). But the Wage and Hour Administrator's regulation promulgated under the Equal Pay Act, 29 C.F.R. § 800.116(d), relied upon both by defendant in *Gilbert* and by defendants in this action, permits disability plans in which the benefits may accrue unequally to similarly situated participants due to a participant's sex. The *Gilbert* opinion traced the legislative history of the Bennett Amendment, discussed *supra,* and its reference to the Equal Pay Act.[8] Speaking for the majority, Mr. Justice Rehnquist wrote: "Because of this [Bennett] amendment, interpretations of section 6(d) of the Equal Pay

---

men and women, no wage differential prohibited by the equal pay provisions will result from such payments, even though the benefits which accrue to the employees in question may be greater for one sex than for the other." Wage and Hour Administrative Opinion Letter No. 1117 (W–1470), [1969–1973 Transfer Binder, Administrative Rulings] Lab.L.Rep. (CCH) ¶ 30,681 (August 25, 1970). Three years later the Administrator delivered a similar opinion in a situation bearing a striking parallel to the instant case. The question propounded to the Administrator was, "If an employer makes equal contributions to a retirement plan covering male and female employees but if, as a result of separate actuarial tables used by the plan's administrators, the female employees, other things being equal, receive smaller monthly retirement benefits, is the employer in violation of the equal pay provisions?" The

Administrator replied by reaffirming its 1970 position: "In response to your initial question, our opinion letter of August 25, 1970 [W&H Opinion Letter No. 1117] sets forth our current position under the Equal Pay Act. We are cognizant of the recent amendments to the Civil Rights Act and the Guidelines issued by Equal Employment Opportunity Commission (EEOC) on pension benefits and we will continue to watch developments in this area. However, we do not anticipate any change in our position in the immediate future." Wage and Hour Administrative Opinion Letter No. 1276 (WH–224), Lab.L.Rep. (CCH) ¶ 30,874 (April 26, 1973).

8. Specifically, the Court noted the remarks of Senator Humphrey, 110 Cong.Rec. 13663–13664 (1964).

Act are applicable to Title VII as well . . . ." *Id.* at 144, 97 S.Ct. at 412. The opinion went on to quote with favor the Wage and Hour Administrator's regulation, 29 C.F.R. § 800.116(d), and stated that this interpretation and the legislative history of Title VII support "what seems to us to be the 'plain meaning' of the language used by Congress" when it enacted Title VII. *Id.* at 145, 97 S.Ct. 401.[9] Accordingly, the Court held that the Wage and Hour regulation, rather than the Commission guideline, was, because of the Bennett Amendment, the controlling interpretation of Title VII.

■ The conclusion of the Supreme Court is manifest. With regard to the specific question of benefits and insurance plans, the Wage and Hour Administrator's regulation, 29 C.F.R. § 800.116(d), accurately reflects the provisions of the Equal Pay Act. Because of the Bennett Amendment, the Equal Pay Act and proper interpretations thereof are incorporated into Title VII, where the two statutes overlap. It is apparent both from the language of 29 C.F.R. § 800.116(d) and from the 1970 and 1973 Opinion Letters of the Wage and Hour Administrator, *see* note 7 *supra*, that the retirement and insurance programs which Colby sponsors and which TIAA–CREF manage do not run counter to the terms of the Equal Pay Act. Therefore, under the rationale of *Gilbert*, the plans do not violate Title VII.

Plaintiff seeks to avoid the impact of *Gilbert* by referring the Court to *Manhart v. City of Los Angeles*, 553 F.2d 581 (9th Cir. 1976) (hereinafter *"Manhart I"*), *rehearing* denied, 553 F.2d 592 (9th Cir. 1977) (hereinafter *"Manhart II"*), *cert. granted,* —— U.S. ——, 98 S.Ct. 51, 54 L.Ed.2d 70 (1977). The Court finds *Manhart* unpersuasive. *Manhart* dealt with a problem akin to but distinguishable from the issue raised in the case at bar. The Department of Water and Power of the City of Los Angeles maintained a retirement plan which required women employees to contribute from their wages to the pension fund 15% more than similarly situated males because of the longer average life expectancy of women. The periodic monthly benefits paid to all similarly situated retirees, male and female, however, were identical. The first time it considered the issue a panel of the Court of Appeals for the Ninth Circuit found the program to be in violation of Title VII. *Manhart I.*

Shortly thereafter, the Supreme Court announced its decision in *General Electric Co. v. Gilbert, supra.* Defendant City of Los Angeles petitioned for rehearing in light of *Gilbert,* but a majority of the same panel of the Ninth Circuit, one judge dissenting, denied the request and held that *Gilbert* did not require a change in the Court of Appeal's initial judgment. *Manhart II.* In reaching its decision on the petition for rehearing, the panel majority distinguished *Manhart* from *Gilbert* on the

**9.** In considering the significance of the Commission guideline, the Supreme Court noted that Congress in enacting Title VII did not confer upon the Commission authority to promulgate rules and regulations pursuant to that title and observed that therefore the Commission guidelines are entitled to less deference than administrative regulations which Congress has declared to have the force of law. *Id.* at 141, 97 S.Ct. 401; *Standard Oil Co. v. Johnson*, 316 U.S. 481, 484, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942). The *Gilbert* court applied to the Commission guideline in question the formula which the Court developed in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), for determining the effect to be given an administrative ruling. By the *Skidmore* test the Court found the Commission guideline wanting. It neither was a contempo-

raneous interpretation of the statute involved nor was it consistent with earlier Commission guidelines on the same topic. *General Electric Co. v. Gilbert, supra*, 429 U.S. at 142–43, 97 S.Ct. 401.

A similar observation may be made with regard to the Commission guideline on pension or retirement plans at issue in this action, 29 C.F.R. § 1604.9(f). Issued in 1972, the guideline is hardly a coeval interpretation of Title VII, which Congress passed in 1964. Furthermore, the Commission guideline, contradicting as it does the Wage and Hour Administrator's regulation, 29 C.F.R. § 800.116(d), is a substantial departure from the previous guideline issued in 1965 in which the Commission stated it would defer to the Wage and Hour Administrator's interpretations on equal pay questions. 29 C.F.R. § 1604.7(b) (1965).

ground that in *Manhart* the out-of-pocket cost of the plan to women was greater than the out-of-pocket cost to men solely because of the women's gender. *Gilbert* did not involve such a discrepancy in employee contributions. The *Manhart* majority found a qualitative distinction between a benefits program in which the direct cost to the participant varies on the basis of the participant's sex and one in which the benefits accrue differently to one group of enrollees than to another due to the sex of the particular class of enrollees. *Manhart II, supra* at 593.

Unlike the program in *Manhart*, defendants' retirement and insurance plans do not assess greater contributions against members of one sex than another. All similarly situated participants pay an equal percentage of their salaries into the annuity and insurance funds, and Colby's contribution is identical for each similarly situated participant. *Manhart*, moreover, did not involve a conflict between a Commission guideline and a regulation issued by the Wage and Hour Administrator.[10] In the instant case, as was true in *Gilbert*, there exists such a conflict. As discussed above, the Supreme Court in *Gilbert* placed its imprimatur on precisely the same regulation of the Wage and Hour Administrator at issue in this action. *Manhart*, therefore, differs from the case at bar both factually and as a matter of law. To the extent that the panel majority in *Manhart II* diverges from this Court's construction of *Gilbert*, this Court must respectfully disagree.[11]

Defendants' motion for summary judgment is granted, and judgment will be entered dismissing the complaint.

IT IS SO ORDERED.

10. The Secretary of Labor, under whose authority the Wage and Hour Administrator serves, filed a brief as amicus curiae in *Manhart I* which emphasized that the Department of Labor has never approved of a practice requiring unequal employee contributions to a pension plan on the basis of sex. Amicus brief at 4, 6. The Secretary's brief painstakingly distinguished the benefits plan challenged in *Manhart* from the type of plan endorsed by the Wage and Hour Administrator in 29 C.F.R. § 800.116(d). Amicus brief at 12–14.

11. Plaintiff also seeks support from an opinion of the Indiana Supreme Court in *Reilly v. Robertson*, Ind., 360 N.E.2d 171, 13 E.P.D. (CCH) ¶ 11,626 (1977). *Reilly* held that the use of separate mortality tables in computing retirement benefits for male and female public school teachers, which resulted in lower periodic payments to female retirees, violated Title VII. Although released after the Supreme Court issued *General Electric Co. v. Gilbert*, *Reilly* does not mention *Gilbert*, and its precedential value must be discounted accordingly.